May it please the Court, Your Honors, Holly Sullivan on behalf of Mr. Tseng. I would request two minutes to reserve for rebuttal if possible. Mr. Tseng faced trial by ambush. He was convicted based on the testimony of witnesses who were not subject to cross-examination and did not appear at trial. The District Court allowed foreign agents, agents from Venezuela, to testify regarding statements made outside of the presence of the jury. It was allowed to allow testimony by those agents as to the ultimate issue in the case. And also allowed prosecutors to hide exculpatory records that were not turned over to the defense until trial. This trial was unfair, it was unjust, and it was unconstitutional. First, I'd like to address the hearsay and confrontation clause violations. In Crawford, testimonial evidence raises Sixth Amendment concerns, and there must be a showing that the witnesses, the testimony that's given, the witnesses must be both unavailable and have been subject to cross-examination. Any statement to police is testimonial under any definition. Here, Agent Cordero, who is the equivalent of an FBI agent in Venezuela, a CICPC agent, was allowed to testify about statements made to her in Venezuela by non-testifying witnesses. Excuse me. The Court advised the jury that the statements were not admitted for their truth, but only to give context to why the investigation occurred. And does that non-hearsay purpose call Crawford into play? Generally, no, it does not. But the way that those statements were used actually shows that, in fact, they were admitted for the truth. In looking at both syllabi of the Seventh Circuit case – Wait a minute, wait a minute. Ordinarily, we hold that juries are presumed to follow the instructions of the court. And here, in addition to simply making a ruling, the Court gave a cautionary instruction to the jury and said, this is not to be considered by you as to whether it's true, but only how it motivated – I mean, I'm paraphrasing – but only how it motivated Agent Cordero. Why are you – on what do you base the argument that, in spite of that cautionary instruction and the – at least the potential logic of that ruling, that we must hold that this was actually admitted for its truth and the jury considered  For two reasons, Your Honor. First, it is true that under the case law, juries in general are assumed to be following the court's instructions. But there are times when, especially in Confrontation Clause cases, where it is shown that juries oftentimes do not follow the court's libertine instruction. Specifically in this case, there are two reasons why it's apparent that the jury did not follow the court's instruction. First, during the time of closing argument, the government argued those statements repeatedly for their truth. And as in Silva, at the time of closing argument, the pretextual nature of the government's argument that these statements are not offered for the truth is exposed when they're repeatedly arguing that these statements are for their truth. Secondly, at that time, defense counsel objected to, you know, the argument that these statements are for their truth, and the court's instruction at that point, and requested a limiting instruction from the court again that these statements are not being offered for their truth. The court's instruction is ambiguous at best and actually quite confusing. The court's instruction at that point said you should only regard in that regard not only for the truth of the matter, but for the effect on the hearer and what that hearer did with what inquiry as was testified to. Not only is that a completely confusing instruction to give the jury, but the court at that point is telling the jury to consider these statements not only for their truth, but also for the effect on the listener. Kagan. Could trial counsel object to the use of those statements on confrontation clause grounds? Somewhat. Before ---- Wait a second. Yes or no question? No. It's not a somewhat. I understand you're objecting on hearsay, but did he object on confrontation clause grounds? Prior to the statements being introduced, it was brought to defense counsel's attention that agents would be testifying about an investigation that occurred in Venezuela. And at that point, counsel raised that there would be confrontation clause concerns with testimony regarding investigation in Venezuela. So that objection was made prior to the testimony. At the time that the testimony was taken of those statements, there was no objection to a confrontation ---- there was no confrontation clause objection, but there didn't need to be at that time, as the statements were continually being offered not for their truth. And the court, you know, defense counsel asked for an appropriate limiting instruction. The court gave a limiting instruction. And at that point, there should not have been a confrontation clause issue with those statements if they were not offered for the truth. The problem is that the statements were, in fact, offered for the truth, were argued for the truth by the prosecutor in closing argument, and then the district court at the time of closing argument instructed the jury to consider them not only for the truth, but also for the effect on the hearer. But why were they relevant for the truth? I mean, really, wasn't Agent Cordero's state of mind the most critical aspect of this? Agent Cordero's state of mind is irrelevant. Whether or not Agent Cordero ---- Agent Cordero's role in the investigation, the reason why she went to a certain location, maybe those statements would have been relevant, what investigation she actually conducted. But the statements that she elicited and the statements that she gave at trial, there's no use for them unless ---- no relevance for them unless they are offered for the truth. It ---- All right. So do we review this for harmless error or plain error? I believe that this should be reviewed for harmless error. Either way, even under a plain error standard, this error was plain. But there really was overwhelming evidence of guilt here, given the signed confession. And other aspects of the evidence. I disagree. This case was a retrial. And the difference between the first trial in which a hung jury resulted and the second case in which there was a conviction was the testimony of Venezuelan agents. But didn't Mr. Singh, when he was flying back to the United States, handwrite out in his own writing a confession? Mr. Singh ---- Again, unfortunately, my answer to that is somewhat. There were statements that were given on the plane, in the flight from Caracas to the United States. The statements, I would not argue, were a confession. There were statements as to intent that were given. And Mr. Singh testified at both trials, at the first trial and the second trial, that the reason he would not tell the agents, both the CICPC agents in Caracas and also the FBI agents, the embassy agents who were accompanying him from Caracas to Miami, was out of fear. That he had been threatened by the people who held him captive in Caracas to not discuss what had happened with agents or with law enforcement and to tell them what had happened. So he discussed his reasons for making those statements, both to the Venezuelan agents in Caracas and also on the plane, flying to Miami. What do you think is your strongest argument for reversing this trial? I think it's a conglomeration of three arguments together. I think it's the hearsay statements that were elicited. The problem with the hearsay statements are the sole issue in this case, and I don't think the judge, the government, nor the jury could argue any differently, is if Mr. Singh was actually held captive in Venezuela, there was no fraud. That was the sole issue in this case. So the credibility of Mr. Singh versus the credibility of the non-testifying witnesses was paramount. That was the sole decision the jury was to make. And here, Agent Cordero was allowed to testify that she spoke to Elena Lee, Mr. Singh's business partner's husband, who said he knew nothing of a kidnapping and he gave no money to try and secure Mr. Singh's release. Those statements directly contradict the deposition of Elena Lee, Mr. Singh's business partner that was taken in Taiwan. It calls into question her credibility. Additionally, there were statements that Agent Cordero spoke of from Mr. Alvarado, that he gave no indication that any of his employees, including Mr. Singh, were out of the office for two months prior to this offense happening. Those statements call into credibility and call into question the testimony of both Mr. Singh and also of Ms. Lee, who both testified were subject to hours of cross-examination, and their credibility was the sole issue in this case. Compounded with that were the agent, Agent Cordero, allowing to give her opinion as to the ultimate issue in this case, whether or not Mr. Singh was held captive for money, whether he was kidnapped. Agent Cordero was allowed twice at trial to give her opinion that she did not believe Mr. Singh had actually been kidnapped, and that was based on the testimony of both the husband of Elena Lee and also by Mr. Renzo Alvarado, the boss. That unsupported opinion testimony invades the province of the jury. The jury is to make a determination as to credibility of witnesses. The jury is to determine who is telling the truth in questions of facts. And it's reversible error, as in Sanchez-Lima, for a witness to make that decision, to put the jury in a position that if they give weight and credibility to the testimony of that agent, that they thus have to find that the defendant is not telling the truth or that another witness is not telling the truth. That is an opinion on the ultimate issue in the case. Espinosa noted that it is especially important when it is an agent's opinion that is being given, because juries tend to give more credibility and weight to the opinion of an agent. Here, FBI agents, U.S. agents, testify that they do not have the ability, the lawful authority, to be conducting an investigation in Venezuela. Based on those statements, it became extremely important as to the opinion of the Venezuelan agents and what they believed was the result of their investigations. Now, they were testifying as lay witnesses, weren't they? They weren't qualified as experts in this case. They were not qualified as experts. The agents, though, especially Agent Cordero, Agent Cordero is the one who gave the opinion that she did not believe, based on her investigation in Venezuela, that Mr. Tseng had been kidnapped. And that opinion does go beyond a lay opinion. It's not similar to, you know, Von Wille in other cases, whereas things like,  It's not that type of just logical opinion. It's based on her investigation of statements that are made to her, hearsay statements that are made to her, and whether she believes that a person was kidnapped or held captive. And that does go beyond just a lay person opinion. Additionally, the government elicited testimony from her of the types of cases she had been involved in, the number of kidnapping investigations that she had done. And although the opinion was not given as an expert opinion, there was bolstering of her credibility in making that ultimate issue, opinion. I think the third strongest issue is the failure of the government to produce Brady records, and those were the phone records that were produced during trial. The records are exculpatory in numerous ways. First, they do impeach the extremely important credibility of that agent, of Agent Cordero. The phone records show that although Agent Cordero, in speaking with Mr. Tseng's boss, may have believed that everything was fine at the office and no one was out of the office for over two months, the cell phone records contradict that. The cell phone records, at a minimum, show that Mr. Tseng for two months was around Venezuela, going from city to city, and was not in the office conducting business as usual. At a minimum, they show that. Secondly, they also show a separation of Mr. Tseng and his business partner, Elena Lee, that they were physically separated from at least December 12th of 2006 until Mr. Tseng was released on January 6th, 2007. There were over 240 calls during that time, and it defies logic that Mr. Tseng would be calling Ms. Lee if she's standing right next to him during that time period. The sheer volume of calls lends credibility to the fact that, to Mr. Tseng's testimony, that other people, the captors were using his phone, were making calls to China and to Hong Kong. The phone records show that. Additionally, the calls greatly diminished after January 6th, 2007, the day that Mr. Tseng was released from custody, and there was only one phone call after that day. Lastly, at a very minimum, the phone records corroborate that Mr. Tseng was in Valencia, Venezuela, on the day that he stated that he was taken captive from a restaurant in Valencia, Venezuela. Your Honor, based on that, I'd like to reserve my remaining time for rebuttal. Thank you. Good morning, Your Honors. May it please the Court, David Leshner for the appellate United States of America. I would like to focus my initial Were you the trial attorney? I'm sorry, Your Honor? Were you the trial attorney for the government? No, Your Honor, I was not. I would like to begin focusing my comments on the issue of the confrontation clause that defense counsel raised, and I would like to begin by answering Your Honor's question directly, and that is that there was no objection to the testimony of Investigator Cordero on confrontation clause grounds. In fact, there is one statement at issue here, truly one out-of-court statement, and we believe that under the United States v. Jawara, the review is for plain error, and that standard has not been met. The only out-of-court statement, testimonial statement, testified to by Investigator Cordero was the statement by Elena Lee's husband, and it's at the supplemental excerpts of record SCR 152 and 153, that the defendant and Elena Lee were always together. As Your Honors noted, at defense counsel's request, the district court gave an appropriate limiting instruction for this testimony, and the Supreme Court has noted in Tennessee v. Street that a limiting instruction is the appropriate way to deal with this, and that there is no special exception, as was suggested earlier, for confrontation clause issues. The district court gave an appropriate limiting instruction during the testimony of Agent Cordero, and in fact, when subsequent, and I don't even call them statements, but at SCR 161, it was asked of Investigator Cordero whether there was any indication about certain matters relating to her interview with Elena Lee's husband. You will note there's no statement testified to there, and thus, in our view, no confrontation clause issue at the outset, but even so, the district court properly provided another limiting instruction during the government's closing argument. Now, Elena Lee herself testified by video deposition. That is correct, Your Honor. And was Mr. Singh allowed to fully cross-examine her? She testified in support of the kidnapping. She testified essentially in support of the defense. Her testimony was that she was with Mr. Singh when he was kidnapped. That was fully fleshed out in the deposition, and as we note in the footnote four of our brief, although all of that testimony from Elena Lee and Mr. Singh is throughout the appellant's brief, the fact is the jury rejected it, and they found by virtue of the verdict of guilty on all five counts, they did not find either Mr. Singh or Elena Lee to be credible in that regard. So, yes, Your Honor, she did testify in the form of a deposition, and it was for the defense. Focusing specifically on the ---- Why did you need to bring these detectives up from ---- From Venezuela, Your Honor? Yes. Well, I believe the testimony was important for two reasons at least, and it certainly was not the only evidence of Mr. Singh's guilt. The ---- and I won't belabor the points that we raised in our brief showing his guilt, including his multiple confessions, but Investigator Cordero's investigation in Venezuela was relevant for several reasons. First, it was necessary to show how Mr. Singh ended up in the, we call it the CICPC, the Venezuelan authorities' offices, on Monday, January 8, 2007, because it was Investigator Cordero who provided the summons and subpoena to Elena Lee's husband, when Mr. Singh supposedly was still kidnapped, on Friday, January 5. Three days later, Elena Lee shows up, and with her is Mr. Singh. His name's not on the subpoena, but he shows up, and they tell Investigator Cordero that, oh, he's not kidnapped, he's never been kidnapped. And that testimony was important for the jury to hear. And her testimony, understanding that at SER, I believe it's 144 to 166. Well, that's her testimony. That's what she said. Correct. Yeah. I was trying to answer, and I apologize if I misunderstood. Why do you have to go into this business about do you believe that there was a kidnap here or not? With respect to the moving off the confrontation clause to the opinion grounds, that testimony was relevant for a limited purpose, and it was relevant to showing the context of Investigator Cordero's information or investigation, excuse me, why she took the steps that she did and her state of mind. I would note in that regard. Why is that all relevant? Your Honor, if you need all that, I just don't understand it. Even assuming it were not relevant, even assuming that that was a bit too much. Maybe it was prejudicial coming from a law enforcement officer. No, I don't believe so, Your Honor, and I don't believe so for this reason. Looking at the whole of Investigator Cordero's testimony from SER 144 to 166, 23 pages of testimony on direct examination only, she testified to the entirety of her investigation in this case. With respect to the two questions that were asked at issue on this opinion, there was, I believe, an omission in our brief. I should have noted for Your Honors that there was actually no objection to that testimony, and that is both at SER 152 and 161. That is correct. Now, I want to be very clear. At page 152, there is no objection at all. At SER 161, the question is asked by government counsel to the effect of, did you – after speaking with Mr. Venzo, did you – were you of the belief that there was no kidnapping? Yes, that was my belief. The question continued. So why did you believe that? And at that point, there was an objection on – as on relevance grounds. So I want to be very clear with the Court that – So just so I understand. So the government's argument that Agent Cordero's state of mind was important was because Mr. Singh's U.S. daughter had called the embassy and said, my father's been kidnapped. And so we are under the belief that he was kidnapped. And then Agent Cordero gets charged with the investigation. She calls in Ms. Lee, who's his close business associate, to find out. And Mr. Singh shows up, so he's obviously not kidnapped. And then he changes his story. Well, I mean, then he says he wasn't kidnapped in written confessions. And then he comes back on the retrial and says, oh, no, I was kidnapped. So all of this kind of is one big blow. That was the government's position. It was the government's position at trial. And just to be clear, there were actually three times during which Mr. Singh admitted that he had never been kidnapped. The first was with Investigator Cordero, which is one of the reasons. So if that's true, why did you need this investigator from Delaware? I think, Your Honor, because it was important for the – Important for what? Her testimony was important for the jury to – Important so that the defendant had issues to bring up on appeal. I hope the Court does not see it entirely that way. I don't see any reason why you'd even ask that question. Well, I can understand the Court's – if the question – It goes right to the ultimate issue in the case. And you had all this evidence anyway. Even assuming, Your Honor, and those two questions – Did the defendant get away with it? I respectfully disagree, Your Honor, and here is why. The testimony of Investigator Cordero spanned 23 pages in the record. And we are picking out two questions that were, frankly, buried in the middle of her direct examination. She testified at length regarding her investigation, her interviews of Elena Lee and the defendant. She testified at length regarding her analysis of telephone records. And looking at this, again, even if the Court were to find that this – Why wasn't she qualified as an expert? She provided, Your Honor, in the government's position, an appropriate lay opinion based on her investigative experience, as well as, most important for this case, her firsthand observations and perceptions in the course of this investigation. And we do believe that under this Court's decision in United States v. Von Willey, that that – Why do you have to rely on lay opinion? Your Honor, that was the – perhaps we could have qualified an expert, but in the government's view it was not necessary in the context of this case where we brought in investigators with firsthand knowledge of the investigation to provide that testimony. And even if those two isolated questions in the middle of a direct exam which were not – It's like bringing in the police officer in a case where maybe there's some dispute or this or that, and just asking the officer, do you think this person committed a crime? Yes. You can't do that, can you? Well, Your Honor – The crime wasn't kidnapping. Exactly. The crime she was convicted of was wire fraud. And in the United States v. Sullivan case we start in our briefs, the elements of wire fraud are a scheme to defraud and the use of the wires to perpetuate that scheme and intent to defraud. So it is correct, and that is why, as we point out in our briefs, with respect to the argument under Federal Rule of Evidence 704B that this was testimony going to a state of mind. Well, it simply wasn't, because one could not – that testimony could not necessarily compel, which is this Court standard, the conclusion that this defendant had engaged in a scheme to defraud his family. The jury certainly found that based on the entirety of the evidence, but not based on Investigator Cordero's testimony. And this – How do you know that? Because of the overwhelming nature of the evidence, Your Honor. So then you didn't need Cordero's testimony. And perhaps not, but I would – I'm not trying to quarrel with that. All I would say is I believe the testimony was – Can't you run a good, clean trial down there? We do our best, Your Honor. We do. I don't see that here. Well, Your Honor, I would say that even if this – You had everything out there. Well, we also had a defendant who was testifying in his own defense, an unindicted co-conspirator who was testifying that the kidnapping actually occurred and the decision was made that this was appropriate testimony. And I would – I don't want to repeat myself. I would say even if this Court were to find that these two isolated questions were error, it was, under any standard of review, we believe appropriate, plain error. But even under harmless error of review, these two questions did not affect the verdict in light of the overwhelming evidence of this defendant's guilt. I don't have the indictment in front of me right now, but was Ms. Lee named as an unindicted co-conspirator in the indictment? Your Honor, that is a – Your Honor, no. So just against him. That is correct. Why do you keep referring to her in the briefs as an unindicted co-conspirator? I refer to that because it was – that was the government's theory at trial, and I should be clear about that. It was the government's theory at trial that both the defendant and Elena Lee, the ones who were placing the calls for money from Mr. Sang from the defendant's family were doing this together, that when they then show up together at the CICPC offices on Monday, January 8th, both Elena Lee and the defendant say, well, he's never been kidnapped, that never happened. Specifically, Investigator Cordero testified that Elena Lee said, I have a summons here. I brought the defendant. He's never been kidnapped. And I would say also, Your Honor, there was evidence from which the jury could conclude, given that demands for money came only from Elena Lee and the defendant, that she was part and parcel of this. But your quote is correct. She was not charged in this indictment. Is she a U.S. citizen? Your Honor, I do not believe so, no. She was deposed in Taiwan where she resides. Unless the Court has further questions for me, I would submit. All right. I'll just give you – you've got 30 seconds. Perfect. Thank you, Your Honor. The only issue that I want to stress is that there never was an issue with the beginning of Agent Cordero's testimony. She testified about statements that Mr. Tseng made to her, that Elena Lee made to her. That was never an issue, and it wasn't the import of her testimony. Both Mr. Tseng and Ms. Lee testified about statements they made to agents in Venezuela. Whether two agents testified about the statements that were made or ten agents testified about those statements that were made, it didn't matter. They admitted that those statements were false. The only important part of her testimony and the only reason she was brought to testify was to elicit these hearsay statements from non-testifying witnesses that were isolated and not subject to cross-examination. Thank you. Okay. This matter is submitted. We're going to take a – you know, I might say that you might want to sell a script for this case to Hollywood, huh? It might be worth watching.
judges: Pregerson, Graber, Wardlaw